MERCHANTS' NATIONAL BANK, Appellee, v. R. E. CRESSEY, ET AL., Appellees; C. A. ROSEMOND, Appellee; FRANK S. SKINNER, Appellant.

Suretyship: EXTENT OF LIABILITY: CONTRACT: CONSTRUCTION. The
1 law favors sureties and a contract imposing obligations upon them will be strictly construed so as to impose only the burdens within its terms; it will not be extended either by implication or construction. Thus a contract of the stockholders of a corporation to repay a bank all moneys advanced or loaned the corporation on and after that date, including renewals thereof, will not render the sureties liable for pre-existing indebtedness.

Same. Under an agreement of sureties to repay money advanced or
2 loaned another after the date of the agreement, a renewal note given for an existing indebtedness was not within the agreement; as it amounted simply to a change in the evidence of an old debt, and was not an advance or loan on and after the date of the contract, and the sureties were not liable therefore.

Same: CONTRACT OF GUARANTY: FRAUD: EFFECT. The fact that a
3 surety was induced by false representations to sign an agreement of guaranty, which was delivered and acted upon by the other party without knowledge of such representations, would not relieve the surety of liability for obligations falling within the terms of guaranty.

Same: DISCHARGE OF GUARANTOR: RENEWAL OF INDEBTEDNESS. Where
4 a contract of guaranty including renewals provided that it should be effective until after thirty days written notice to the contrary was given, by giving the notice a guarantor was not relieved from liability for indebtedness existing at the time of the notice, but only from that subsequently arising; and a creditor accepting a

renewal of existing indebtedness after such notice elected to be bound by the notice, and will be presumed to have relied upon the security existing at the time of the renewal.

Same: BURDEN OF PROOF. In a suit upon a contract of guaranty to repay money advanced or loaned, including renewal after that date, and until notice to the contrary, the burden is upon the creditor to prove that the indebtedness sued upon was for loans or renewals after execution of the contract.

*Appeal from Cedar Rapids Superior Court.*—HON. C. B. ROB-BINS, Judge.

TUESDAY, APRIL 14, 1914.

APPEAL by Frank S. Skinner from a judgment holding him liable on a contract of guaranty; and appeal by the Merchants' National Bank of Cedar Rapids, from a judgment finding C. A. Rosemond not liable, as guarantor.—*Affirmed* in part, and *Reversed* in part.

*Barnes & Chamberlain,* for plaintiff.

*F. L. Anderson,* for defendant Skinner.

*Powell & Randall,* for defendant Rosemond.

WITHROW, J.—I. This action was brought against appellant, Frank Skinner, and six others upon a written contract of guaranty to recover a balance of indebtedness merged in judgment in favor of the Merchants' National Bank of Cedar Rapids against the Cedar Rapids Cereal Company. Four of the defendants made default, and judgment was entered against them. Defendants Skinner, this appellant, and Rosemond each made defense. Upon the trial a verdict was directed by the court against Skinner, from which he appeals, and in favor of Rosemond, from which the bank appeals.

The action is based upon a contract of guaranty, which is as follows:

Whereas, the undersigned are stockholders in the Cedar Rapids Cereal Company, a corporation organized under the laws of the state of Iowa, with its principal place of business in the city of Cedar Rapids, Iowa, and, therefore, interested in the business of said company, and its securing by loans from time to time from the Merchants' National Bank of Cedar Rapids, Iowa, the sums of money sufficient to enable the company to properly conduct its business. Now, therefore, in consideration of the sum of one dollar, the receipt whereof is hereby acknowledged, and in further consideration of the advancement of money and the giving and extending of credit by the Merchants' National Bank of Cedar Rapids, Iowa, and for other valuable considerations, we, the undersigned, promise to the Merchants' National Bank of Cedar Rapids, Iowa, on demand, all the money advanced and loaned the said Cedar. Rapids Cereal Company on and after this date, including any renewals thereof, without notice to us, whether in full or in part, the total amount of said loans not to exceed eleven thousand five hundred dollars ($11,500.00)· in the aggregate, together with interest on said loans and advances from the date named are made and received at the rate of six per cent. (6 per cent.) per annum until paid. This guaranty to be effective until thirty (30) days written notice to the contrary is given the Merchants' National Bank by the undersigned. Dated at Cedar Rapids, Iowa, this 6th day of January, 1911. Jno. E. Gable.   C. A. Rosemond.   R. E. Cressey.   C. H. Kurtz. J. W. Zook.   J. W. La Grange.   Frank S. Skinner.

The answer of Skinner, the appellant, raised the issue of fact that his name was procured to said instrument by one Kurtz by fraudulent representations as to the value of the property of the principal debtor, the cereal company; and also that it was agreed between appellant and Kurtz, who procured his signature, that the instrument would not be delivered to the bank until signed by all of the stockholders of the Cedar Rapids Cereal Company.

As a question of law raised by the pleadings, it was urged that the instrument of guaranty sued upon provided only for

the amount advanced and loaned by the bank from and after
the date of said instrument, and that there was no new money
actually advanced and loaned after said date.

Upon the trial the following concession of facts was made:

It is agreed and stipulated by and between the parties
that the Cedar Rapids Cereal Company, on October 2, 1911,
made and executed its promissory note to the Merchants' Na-
tional Bank of Cedar Rapids, Iowa, in the sum of $11,500, pay-
able October 15, 1911, with 6 per cent. interest per annum
after maturity; that said note was given in renewal of another
note previously executed, which said note was given in re-
newal of several other notes previously executed, aggregating
the total amount of the first note above mentioned; that said
note first mentioned was placed in judgment against the Cedar
Rapids Cereal Company in the superior court of the city of
Cedar Rapids, Iowa, upon the 8th day of July, 1912; that an
execution was issued upon said judgment, and all the property
and assets of the Cedar Rapids Cereal Company were levied
upon and sold under said execution at public sale by the mar-
shal of the city of Cedar Rapids, and there was realized there-
from and applied upon said judgment the sum of $7,365.32,
leaving a balance of principal and interest upon said judg-
ment due and unpaid; that upon the 15th day of December,
1909, the Cedar Rapids Cereal Company owed the Merchants'
National Bank the sum of $11,500, and no additional moneys
were ever advanced by the said bank to the said cereal com-
pany after said time, the indebtedness having been carried
by the said bank upon new notes representing the same, taken
from the bank from time to time, in payment and surrender
of the old note, and upon the payment of the interest on the
same; and it is agreed that the amount still due upon said
judgment is the sum of $4,670.92, with interest from the 17th
day of August, 1912, at 8 per cent. per annum.

It also was conceded that the officers of the Merchants'
National Bank had no knowledge of any statements or repre-
sentations made by Kurtz to the appellant, Skinner.

II. We consider first, on Skinner's appeal, the question
of law presented by the record, and his claim that his liability
under the instrument of guaranty was only for indebtedness

contracted after its execution; and that it appears without dispute that the indebtedness for which was given the note which was finally merged in the judgment existed at and prior to the time he signed the instrument, and for such he is not liable.

The relation of the appellant to the claim in suit is that of surety only, and the rights of the parties must depend upon a construction of the agreement, governed by the general and just rule that sureties are favored in the law, and a contract creating obligations against them must be strictly construed, so as to impose only the burdens within its terms, and should not by implication or construction be extended. Brandt on Suretyship, section 79; *Crapo v. Brown,* 40 Iowa, 490; *Ida County Bank v. Seidensticker,* 128 Iowa, 54.

1. SURETYSHIP: extent of liability: contract: construction.

The language of the agreement which recites the limits of liability is: "We promise to the Merchants' National Bank of Cedar Rapids, Iowa, on demand, all the money advanced and loaned the Cedar Rapids Cereal Company on and after this date, including any renewals thereof," etc.  It would require a forced construction, not within the plain meaning of the language used, to hold that the contract created liability for pre-existing indebtedness.  The use of the words "on and after this date" is a definite limitation, not extended or enlarged by the subsequent provision "including any renewals thereof," as such could apply only to that which immediately preceded it.  It is a recognized rule that an instrument creating a liability as surety, which did not in terms make it applicable to a pre-existing indebtedness, could not be made the basis of a recovery for such indebtedness, but that it related only to that created from and after the time of its execution.  32 Cyc. 74; *Bartlett v. Wheeler,* 195 Ill. 445 (63 N. E. 169); *United States v. Boyd,* 15 Pet. 187 (10 L. Ed. 706); *United States Fidelity Co. v. Fultz,* 76 Ark. 410 (89 S. W. 93).

It follows that the liability of the appellant can only be for money loaned and advanced after the date of the execution

of the contract of guaranty or suretyship; and with this conclusion we inquire into that which appellant urges brings the case within that rule.

III. Fairly stated, the claim of the appellant is that, while it is conceded that at and prior to the time of the execution of the contract of suretyship there was an indebtedness of the cereal company amounting to $11,500, evidenced by several notes, and while the note upon which the judgment was based was given in renewal of a note previously executed, which was in renewal of the former indebtedness, the note for $11,500, dated October 2, 1911, being after the execution of the surety contract, was in fact given in payment of and for the surrender of the former note, the interest on it being at such time paid, and that by reason of such facts a new debt was created. Supporting this claim of the appellant, quotation is made from 7 Cyc. 877, to the effect that, ''if a new note is taken in payment of an original note, the original debt is extinguished and a new debt created,'' and as cases which it is claimed uphold that rule are cited, *Smith v. Bynum,* 92 N. C. 108; *Merriman v. Social Mfg. Co.,* 12 R. I. 173. The case first cited arose out of certain rights claimed against personal property, alleged to be covered by a chattel mortgage. All that was held in that case was that, where indebtedness secured by a chattel mortgage which after its maturity was settled by giving a new note and mortgage upon the same property, a purchaser of the mortgaged property from the mortgagor prior to the execution of the second mortgage took it free from that incumbrance. In the *Merriman* case it appeared that certain notes secured by an accommodation indorsement were held by a bank. At their maturity other notes for the same amount, and with the same indorsements, were offered for discount and accepted. The proceeds of the discount were placed to the credit of the makers, who then drew their checks and paid the former notes, which were returned and stamped ''paid.'' The controversy in that case was as to the liability of the indorsers; their obligation under

2. SAME.

a separate contract being to pay "all the indebtedness now due or to grow due," and was made to turn upon the fact that the transaction was not a mere exchange of new notes for the old ones, which the court held was not evidence of absolute payment, but upon the fact that the new notes were given to create new credits, which were in turn used, by check, to pay the old notes. The case does not sustain the rule, as broadly claimed by the appellee.

It is true that, when a note is given in satisfaction of earlier paper, such paper is thereby discharged. This means at most that the right of action upon the original evidence of indebtedness is lost, having been merged in the new note, which alone, after such transaction, stands as the true evidence of indebtedness.

Quite in point with the present case is that of *Glyn v. Hertel,* 8 Taunton Rep. 208 (Eng.), in which it was held that a guaranty upon which suit was brought only contemplated future loans, and that, when prior notes were taken up and new notes given in their stead, such did not amount to a loan of money so as to charge the defendant.

Many cases may be found in the books bearing upon the question of the liability of a surety upon original notes which are subsequently renewed and the indebtedness evidenced by new paper, but they afford no satisfactory solution of the present question. Nowhere do we find authority for the conclusion that such a transaction is more than a change in the evidence of indebtedness at times releasing sureties when it appears that the original note is canceled and taken up, and in other instances holding them yet liable when there was no surrender of the original note and the new one was taken under such circumstances as to indicate an intention that it should not be canceled.

Recurring again to the instrument upon which this suit is based, its obligation was to pay all money advanced and the renewals thereof. The transaction resulting in the $11,500 note was in effect but a renewal of prior indebtedness, and

there is in the record nothing to indicate a contrary intent. It was in no sense an original borrowing of money, a creation of indebtedness such as was contemplated by the contract, but was only a change in form of that which spoke for the old debt. We think the trial court erred in directing a verdict against the appellant, Skinner.

IV. As to the claim of fraud urged by the appellant, and also the alleged agreement that the contract of guaranty should not be delivered until it had been signed by others who did not sign it, the foregoing conclusions render their consideration unnecessary. But it may properly be said that the bank officials had no knowledge of any fraud or agreement, if there were such. The appellant joined in the execution of what appeared to be a valid obligation of suretyship, carrying on its face no evidence of infirmity, and delivered it to a third party, an officer of the cereal company, and it was, as the record shows, used as a basis for the renewal of the old loan. Under such facts he has not the right to be relieved of any liability thus permitted to be created. *Savings Bank v. Boddicker*, 105 Iowa, 554.

3. SAME: contract of guaranty: fraud: effect.

V. We turn to the appeal of the bank from the action of the trial court in directing a verdict in favor of defendant Rosemond. His only claim was that, under the last clause of the guaranty, he had the right to be relieved from its obligations on thirty days' notice to the bank, and that he had so elected. He claims, and in this is supported by the evidence, that on July 29, 1911, and on August 21, 1911, he gave written notice to the Merchants' National Bank that he no longer was connected with the cereal company, and that he demanded release as one of the guarantors; both letters being more than thirty days prior to the execution of the note upon which the judgment was based. The clause upon which he relies is: "This guaranty to be effective until thirty days' notice to the contrary is given the Merchants' National Bank."

4. SAME: discharge of guarantor: renewal of indebtedness.

This action is brought upon the instrument of guaranty.

If Rosemond, by reason of prior agreements, was liable as surety for the indebtedness evidenced by the $11,500 note, such does not appear in the record; and his case, therefore, must be treated as resting solely upon the contract of guaranty, and his rights thereunder. His answer filed in the case did not raise the questions considered and decided in the Skinner appeal, but only his right to be discharged because of having given notice as provided by the contract. His motion to direct a verdict, while urging, among other things, nonliability because of the fact that no new loans were made after the execution of the guaranty, was sustained upon the single ground of his having given notice of his intention to withdraw as guarantor, and that the note upon which the judgment was based was a different and subsequent obligation to that upon which he was bound at the time he gave notice of his intention to withdraw as guarantor.

We think that a fair construction of the instrument of guaranty is that there was reserved to the respective parties the right upon the performance of certain named conditions to relieve themselves from such liability as might thereafter arise. What the effect would be on the rights of co-guarantors does not arise as a question under this record. Notice of intention to withdraw could not operate as a discharge from liability existing at the time of the notice. 14 Am. & Eng. Enc. (2d Ed.) 1160. But it appears from the evidence that with such notice the appellant bank thereafter took a renewal of the previous indebtedness. It is urged that as the guaranty provided liability for money loaned on and after its execution, including any renewals thereof, by its express terms the renewal note executed subsequent to his notice of withdrawal came within its express provisions. We cannot so construe it, but rather that he would be liable for money advanced and renewals thereof during the time in which by its terms he would be held, which was the time until he should by proper notice indicate his purpose to be no longer held. It cannot be said that this in any way lessened the rights of

the bank in its enforcement of the obligation against him, for with notice of his withdrawal ·it could yet rely upon the existing evidence of indebtedness made before such notice. In accepting the renewal after such notice it thereby elected to be bound by his notice of withdrawal, and is presumed to have relied upon the security existing at the time of the renewal.

It should also be remembered that, to establish liability in any event, the burden of proof was upon the plaintiff to show, as against the guarantor, the loan of money or renewals of the same from and after the execution of the instrument upon which this suit is based and before notice of revocation. As found in the previous division of this opinion, such has not been shown.

5. SAME: burden of proof.

It follows that, as to the appeal of the Merchants' National Bank, the judgment of the trial court is—*Affirmed;* and as to the appeal of Skinner the judgment is—*Reversed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.